1  JOHN F. HORVATH [*Pro Hac Vice*, pending]
   jhorvath@hlpc-law.com
2  HORVATH & WEAVER, P.C.
   10 South La Salle, Suite 1400
3  Chicago, IL 60603
   Telephone:  (312) 419-6600
4  Facsimile:    (312) 419-6666

5  EDWARD J. MCINTYRE [SBN 80402]
   emcintyre@swsslaw.com
6  SOLOMON WARD SEIDENWURM & SMITH, LLP
   401 B Street, Suite 1200
7  San Diego, California 92101
   Telephone: (619) 231-0303
8  Facsimile: (619) 231-4755

9  Attorneys for Defendants San Diego Refrigerated
   Services, doing business as Harborside
10 Refrigerated Services, doing business as
   Harborside; San Diego Refrigerated Services, Inc.
11 doing business as San Diego Terminals and Pla-Art
   International, Inc. doing business as San Diego
12 Cold Storage, also known as, SDCold, doing
   business as San Diego Cold, doing business as San
13 Diego Ice & Cold Storage

14              **UNITED STATES DISTRICT COURT**

15              **SOUTHERN DISTRICT OF CALIFORNIA**

16

17 CATLIN UNDERWRITING AGENCIES          CASE NO. 08-CV-0173 WQH (JMA)
   LIMITED,
18                                        Complaint Filed:  January 29, 2008
              Plaintiff,
19                                        **ANSWER TO COMPLAINT AND**
      v.                                  **COUNTERCLAIM FOR DECLARATORY**
20                                        **JUDGMENT**
   SAN DIEGO REFRIGERATED SERVICES,
21 INC. D/B/A HARBORSIDE D/B/A SAN
   DIEGO TERMINALS, PLA-ART
22 INTERNATIONAL D/B/A SAN DIEGO
   COLD STORAGE, SAN DIEGO COLD
23 STORAGE, INC., MIGUEL CUEVA A/K/A
   MIGUEL TAMAYO, SERGIO HERNANDEZ,
24 MARCUS FOODS, INC., and DOES 1
   through 100, Inclusive ,
25
              Defendants.
26

27

28

1

## ANSWER TO COMPLAINT

2

## NATURE OF DISPUTE

3

4        1.        San Diego Refrigerated Services, Inc. (SDRS) and PLA-ART International, Inc.,

5    dba San Diego Cold Storage (SDCS) admit only that the entities identified in this paragraph

6    are among the named insureds under the policy.  Except as specifically admitted, SDRS and

7    SDCS deny the remaining allegations in this paragraph.

8                                           ## PARTIES

9        2.        SDRS and SDCS have neither knowledge nor information sufficient to form a

10    belief about the truth of the allegations in this paragraph and, accordingly, deny them.

11        3.        SDRS and SDCS deny that Harborside does business as San Diego Terminals.

12    SDRS and SDCS admit that San Diego Refrigerated Services, Inc. does business as San Diego

13    Terminals and admit the remaining allegations in this paragraph.

14        4.        SDRS and SDCS admit the allegations in this paragraph.

15        5.        SDRS and SDCS deny the allegations in this paragraph.

16        6.        SDRS and SDCS deny that Miguel Cueva is also known as Miguel Tamayo.

17    SDRS and SDCS admit that Miguel Cueva resides in California.

18        7.        SDRS and SDCS have neither knowledge nor information sufficient to form a

19    belief about the truth of the remaining allegations in this paragraph and, accordingly, deny

20    them.

21        8.        SDRS and SDCS deny the allegations in this paragraph.

22                              ## JURISDICTION AND VENUE

23        9.        SDRS and SDCS admit the allegations in the paragraph.

24        10.        SDRS and SDCS have neither knowledge nor information sufficient to form a

25    belief about the truth of the remaining allegations in this paragraph and, accordingly, deny

26    them.

27        11.        Defendants SDRS and SDCS deny that Harborside does business as San Diego

28    Terminals.  SDRS and SDCS otherwise admit the allegations in this paragraph.

<strong><u>FACTUAL ALLEGATIONS</u></strong>

**A.      <u>INSURANCE POLICY</u>**

12.      SDRS and SDCS admit the allegations in this paragraph.

13.      SDRS and SDCS admit the Policy has a $10,000.00 per occurrence deductible and that the policy has a limit of liability of $3.5 million as to the premises located at 1240 W. 28th St. in National City, California.  SDRS and SDCS deny that the policy has a $3.5 million limit as to other insured premises.  Except as specifically admitted, SDRS and SDCS deny the remaining allegations in this paragraph.

14.      SDRS and SDCS deny that plaintiff has accurately quoted the cited portions of the policy.  SDRS and SDCS state that the policy speaks for itself and deny the remaining allegations in this paragraph.

15.      SDRS and SDCS deny that plaintiff has accurately quoted the cited portion of the policy.  SDRS and SDCS state that the policy speaks for itself and deny the remaining allegations in this paragraph.

16.      SDRS and SDCS deny that plaintiff has accurately quoted the cited portion of the policy.  SDRS and SDCS state that the policy speaks for itself and deny the remaining allegations in this paragraph.

17.      SDRS and SDCS state that the policy speaks for itself.  SDRS and SDCS admit that the cited language appears at Section G, Paragraph 1 of the policy.

**B.      <u>RELEASE OF MARCUS FOODS PRODUCT</u>**

18.      SDRS and SDCS object to plaintiff's naming SDRS as a defendant since SDRS did not have anything to do with storing product for Marcus Food Co.'s account.  SDRS and SDCS deny that Harborside does business as San Diego Terminals.  SDRS and SDCS admit only that SDCS stored food products for the account of Marcus Foods Co. ("Marcus") at its warehouse facility located at 1240 W. 28th Street in National City, California.  Except as specifically admitted, SDRS and SDCS deny the remaining allegations in this paragraph.

19.      SDRS and SDCS have neither knowledge sufficient to form a belief about the truth of the allegations about what Marcus "suspected" and accordingly, deny them.  SDRS

1  and SDCS admit that Marcus knew, by no later than August 8, 2006, that Sergio Hernandez

2  had removed cases of food product from the SDCS warehouse without SDCS' knowledge,

3  authorization, consent or assistance and that he had delivered that food products to Del

4  Rancho Foods, a customer of Marcus.  Except as specifically admitted, SDRS and SDCS deny

5  the remaining allegations in this paragraph.

6         20.    SDRS and SDCS has neither knowledge sufficient to form a belief about the

7  truth of the allegations about what Marcus believed and accordingly deny them.  Except as

8  specifically admitted, SDRS and SDCS deny the remaining allegations in this paragraph.

9         21.    SDRS and SDCS admit that on or before August 8, 2006 Marcus requested a

10  physical inventory count of the goods SDCS was storing for the account of Marcus at the

11  National City, California facility.  Except as specifically admitted, SDRS and SDCS deny the

12  remaining allegations in this paragraph.

13         22.    SDRS and SDCS admit that defendant SDCS conducted a physical inventory

14  count of the product it stored for the account of Marcus at the National City, California

15  facility and advised Marcus of the results of that inventory count on or before August 8,

16  2006.  Except as specifically admitted, SDRS and SDCS deny the remaining allegations in

17  this paragraph.

18         23.    SDRS and SDCS deny the allegations in this paragraph.

19         24.    SDRS and SDCS deny the allegations in this paragraph.

20         25.    SDRS and SDCS admit that during 2006 Del Rancho Foods was a customer of

21  Marcus.  Except as specifically admitted, SDRS and SDCS deny the remaining allegations in

22  this paragraph.

23         26.    SDRS and SDCS admit only that SDCS was informed that Marcus and Del

24  Rancho Foods had entered into an agreement regarding product Del Rancho Foods had

25  allegedly received and for which it had not made payment to Marcus.  SDRS and SDCS

26  admit that Marcus and/or Sergio Hernandez and/or Alberto Sanchez had represented to

27  SDCS that Exhibit "B" was a true and accurate copy of the alleged agreement.  Except as

28  specifically admitted, SDRS and SDCS deny the remaining allegations in this paragraph.

1      27.     SDRS and SDCS deny that plaintiff has accurately quoted the Memo Of

2   Understanding.  SDRS and SDCS state that the document speaks for itself.

3      28.     SDRS and SDCS admit only that SDCS had been advised of a written

4   agreement between Marcus and Del Rancho Foods as of September, 2006 and that SDCS

5   received a document titled Memo Of Understanding and was advised that it was the

6   agreement between Marcus and Del Rancho Foods at some time on or before September 6,

7   2006.  Except as specifically admitted, defendants SDRS and SDCS deny the remaining

8   allegations in this paragraph.

9      29.     SDRS and SDCS only admit that Michael Jerde of SDCS faxed a document

10   entitled "Memo Of Understanding" to Frank Plant of SDCS on September 6, 2006.  Except as

11   specifically admitted, SDRS and SDCS deny the remaining allegations in this paragraph.

12      30.     SDRS and SDCS admit only that, in or around September 1, 2006 SDCS

13   received a fax from MARCUS demanding payment of $124,132.77 for allegedly missing

14   product.  Except as specifically admitted, SDRS and SDCS deny the remaining allegations in

15   this paragraph.

16      31.     SDRS and SDCS admit only that Marcus made a demand against SDCS for

17   payment of $124,132.77 on or around September 1, 2006 but deny the remaining

18   allegations in this paragraph.

19      32.     SDRS and SDCS deny the allegations in this paragraph.

20      33.     SDRS and SDCS deny the allegations in this paragraph.

21      34.     SDRS and SDCS deny the allegations in this paragraph.

22      35.     SDRS and SDCS deny the allegations in this paragraph.

23      36.     SDRS and SDCS deny the allegations in this paragraph.

24      37.     SDRS and SDCS deny the allegations in this paragraph.

25   **C.     MARCUS FOOD COMPLAINT**

26      38.     SDRS and SDCS admit only that Marcus filed the referenced complaint against

27   SDRS, SDCS, Miguel Cueva, Sergio Hernandez and Does 1-100 on May 10, 2006 and that a

28   true and accurate copy of said complaint is attached as Exhibit C to plaintiff's complaint.

1  Except as specifically admitted, SDRS and SDCS deny the remaining allegations in this
2  paragraph.

3       39.     SDRS and SDCS admit only that plaintiff Marcus has made such allegations,
4  among others, in its complaint.  SDRS and SDCS deny liability for the claims asserted against
5  them by Marcus in the Marcus law suit and deny the remaining allegations in this paragraph.

6       40.     SDRS and SDCS deny that plaintiff has accurately quoted the cited portions of
7  the complaint filed by Marcus against defendants on May 10, 2007.  SDRS and SDCS deny
8  liability for the claims asserted against them by Marcus in the Marcus law suit and state that
9  the complaint speaks for itself.

10      41.     SDRS and SDCS admit only that Marcus Food has made such allegations in its
11 complaint.  Except as specifically admitted, SDRS and SDCS deny the allegations in this
12 paragraph.

13      42.     SDRS and SDCS admit the allegations in this paragraph.

14      43.     SDRS and SDCS admit that they first notified plaintiff of Marcus' claim, as set
15 forth in the Marcus complaint, after being served with the summons and complaint in the
16 MARCUS law suit but deny the remaining allegations in this paragraph.

17      44.     SDRS and SDCS admit that they first notified plaintiff of Marcus' claim, as set
18 forth in the MARCUS law suit, after being served with the summons and complaint in the
19 MARCUS law suit but deny the remaining allegations in this paragraph.

20      45.     SDRS and SDCS have neither knowledge nor information sufficient to form a
21 belief about the truth of the allegations in this paragraph and, accordingly, deny them.

22      46.     SDRS and SDCS admit the allegations in this paragraph.

23                         <u>**COUNT I**</u>
24                **(IN THE ALTERNATIVE TO COUNT III)**
25      **DECLARATION OF NO COVERAGE BECAUSE NO OCCURRENCE**

26      47.     SDRS and SDCS incorporate by this reference their answers to paragraphs 1
27 through 46, above.

28      48.     SDRS and SDCS deny the allegations in this paragraph.

ANSWER TO COMPLAINT AND COUNTERCLAIM FOR DECLARATORY JUDGMENT

49.     SDRS and SDCS deny the allegations in this paragraph.

50.     SDRS and SDCS deny the allegations in this paragraph.

51.     SDRS and SDCS deny that the policy provides coverage only in those incidences where there has been "exposure to some sort of physical harm (wind, cold mold, etc.) that results in property damage" as alleged and deny the remaining allegations in this paragraph.

52.     SDRS and SDCS deny the allegations in this paragraph.

53.     SDRS and SDCS deny the allegations in this paragraph.

54.     SDRS and SDCS deny liability to Marcus for the matters alleged in the Marcus complaint.  In the event that any one or more defendant insured under the policy is found liable to Marcus for the allegations in the Marcus complaint, which liability SDRS and SDCS deny, those defendants are entitled to be indemnified by CATLIN under the policy.  SDRS and SDCS deny the remaining allegations in this paragraph.

55.     SDRS and SDCS admit that plaintiff is seeking a declaration that there is no coverage but deny plaintiff is entitled to such a declaration and deny the remaining allegations in this paragraph.

## COUNT II

### (IN THE ALTERNATIVE TO COUNT III)
### DECLARATION OF NO COVERAGE BECAUSE SAN DIEGO
### ACTED ONLY WILLFULLY

56.     SDRS and SDCS incorporate by this reference their answers to paragraphs 1 through 55, above.

57.     SDRS and SDCS admit the existence of § 533 of the Insurance Code but deny that § 533 is applicable in this matter and deny that any of their acts were willful as alleged.

58.     SDRS and SDCS deny the allegations in this paragraph.

59.     SDRS and SDCS deny the allegations in this paragraph.

60.     SDRS and SDCS admit that plaintiff is seeking such a declaration but deny that plaintiff is entitled to one and deny the remaining allegations in this paragraph.

### COUNT III

#### (IN THE ALTERNATIVE TO COUNTS I, II, AND IV)
#### DECLARATION OF NO COVERAGE BECAUSE SAN DIEGO BREACHED
#### ITS DUTIES UNDER THE POLICY'S NOTICE PROVISIONS

61.     SDRS and SDCS incorporate by this reference their answers to paragraphs 1 through 61, above.

62.     SDRS and SDCS deny the allegations in this paragraph.

63.     SDRS and SDCS deny the allegations in this paragraph.

64.     SDRS and SDCS deny the allegations in this paragraph.

65.     SDRS and SDCS deny the allegations in this paragraph.

66.     SDRS and SDCS deny the allegations in this paragraph.

67.     SDRS and SDCS deny that plaintiff has no duty to defend the defendants as alleged.  In the event one or more defendant covered under the policy is found liable to Marcus in relation to the allegations in the Marcus complaint, which liability SDRS and SDCS deny, those defendants are entitled to be indemnified by CATLIN under the policy.

68.     SDRS and SDCS admit plaintiff seeks such a declaration but deny plaintiff is entitled to one and deny the remaining allegations in this paragraph.

### COUNT IV

#### (IN THE ALTERNATIVE TO COUNT III)
#### DECLARATION THAT EXCLUSIONS 7, 10, AND 12 EXCLUDE
#### COVERAGE FOR MARCUS FOODS [*sic*] COMPLAINT

69.     SDRS and SDCS incorporate by this reference their answers to paragraphs 1 through 68, above.

70.     SDRS and SDCS deny that plaintiff has accurately quoted the cited portions of the policy and assert that the policy speaks for itself.  SDRS and SDCS deny the remaining allegations in this paragraph.

71.     SDRS and SDCS deny the allegations in this paragraph.

72.     SDRS and SDCS deny the allegations in this paragraph.

73.     SDRS and SDCS deny the allegations in this paragraph.

74.     SDRS and SDCS deny the allegations in this paragraph.

75.     SDRS and SDCS deny that CATLIN has no duty to defend the defendants in relation to the allegations in the Marcus complaint.  In the event one or more defendant covered under the policy is found liable to Marcus in relation to the allegations in the Marcus complaint, which liability SDRS and SDCS deny, those defendants are entitled to be indemnified by plaintiff under the policy.

76.     SDRS and SDCS admit that plaintiff is seeking such a declaration but deny that plaintiff is entitled to one and deny the remaining allegations in this paragraph.

## COUNTERCLAIM

### I
### THE PARTIES

77.     PLA-ART International, Inc. dba San Diego Cold Storage ("SDCS") is a California corporation which, at all times relevant, engaged in business as a public refrigerated warehouse operator at 1240 W. 28th Street, National City, California.

78.     SDCS is informed that Catlin Underwriting Agencies Limited ("CATLIN") is a company organized under the laws of England engaged in business as a commercial insurers and at all times relevant was authorized to underwrite risks in the State of California.

### II
### JURISDICTION AND VENUE

79.     This Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a)(2) because it is a civil action in which the matter in controversy exceeds $75,000 exclusive of interest and costs, between a citizen of California and a citizen or subject of a foreign state, United Kingdom.

80.     This Court has declaratory judgment jurisdiction over this actual controversy pursuant to the provisions of 28 U.S.C. § 2201, *et seq.*

81.     Venue in this District is proper pursuant to the provisions of 28 U.S.C. § 1391(a)(1) and (2) because a substantial part of the events or omissions giving rise to the

ANSWER TO COMPLAINT AND COUNTERCLAIM FOR DECLARATORY JUDGMENT

1    claim occurred in this District.

2         82.    CATLIN is an alien and thus may be sued in any district pursuant to the

3    provisions of 28 U.S.C. § 1391(d), including in this District.

4                                         III
                            FACTUAL BACKGROUND

5

6         83.    CATLIN issued its Certificate No. LON7801-05 with SDCS, among others, as

7    the named insureds, with a policy effective date of January 1, 2006 (Subject Policy)

8    providing coverage for SDCS' legal liability as a warehouse operator or bailee at 1240 W.

9    28th Street, National City, California ("the National City facility").

10        84.    SDCS stored products for several customers, including MARCUS FOOD CO.

11   ("MARCUS") at the National City facility in June, 2005.

12        85.    SDCS issued MARCUS non-negotiable warehouse receipts for all products

13   SDCS stored for MARCUS' account at the National City facility.

14        86.    Between January 1, 2006 and September 30, 2006, Sergio Hernandez leased

15   office space at the National City facility from SDCS.

16        87.    During the time he leased office space at the National City facility from SDCS,

17   Sergio Hernandez was a sales agent for MARCUS.

18        88.    As a sales agent for MARCUS, Sergio Hernandez arranged sales of product

19   stored at the National City facility to customers for MARCUS' account.

20        89.    As a sales agent for MARCUS, Sergio Hernandez arranged for the delivery of

21   product to the National City facility for storage for MARCUS' account.

22        90.    As a sales agent for MARCUS, Sergio Hernandez inspected inbound and

23   outbound product stored at the National City facility for MARCUS' account.

24        91.    As a sales agent for MARCUS, Sergio Hernandez often received MARCUS'

25   product from SDCS National City facility and delivered product, in his own vehicle, to

26   MARCUS' customers or made arrangements directly with the customers for the customers to

27   come to the National City facility to pick up product and MARCUS knew this fact.

28        92.    As a sales agent for MARCUS, Sergio Hernandez had unrestricted access to the

1  product stored for MARCUS' account at the National City facility and MARCUS knew this
2  fact.

3       93.    On or before August 8, 2006, pursuant to a request from MARCUS, SDCS
4  conducted a physical inventory of all MARCUS' product SDCS had in storage at the National
5  City facility.

6       94.    In September 2006, MARCUS made a written demand on SDCS for the
7  alleged value of product which, according to MARCUS, Sergio Hernandez had removed
8  from the National City facility and delivered to one of Marcus' customers without MARCUS'
9  consent, authorization or knowledge and without any payment to MARCUS for the product
10  ("Released Product").

11       95.    SDCS rejected MARCUS FOODS' demand for payment and denied it was
12  liable to MARCUS FOODS for the Released Product Sergio Hernandez had removed from
13  the National City facility.

14       96.    Similarly, SDCS rejected MACUS' subsequent demands for payment relating
15  to the alleged Released Product.

16       97.    During September 2006, MARCUS provided a Memo of Understanding to
17  SDCS purportedly executed by Alberto Sanchez, the owner of Del Rancho Foods in which
18  Mr. Sanchez agreed to assume certain debt obligations to MARCUS, including an obligation
19  to pay MARCUS for "[A]pproximately $143,000 of products delivered to me by Sergio
20  Hernandez that was not invoiced by Marcus Food Company, Inc".

21       98.    Based on the Memo of Understanding it received from MARCUS and other
22  actions by MARCUS and Sergio Hernandez, SDCS reasonably believed that MARCUS had
23  ratified the actions of its sales' agent Sergio Hernandez and that MARCUS would not pursue
24  any claim against SDCS for the Released Product.

25       99.    SDCS's reliance on the Memo of Understanding to form the belief that
26  MARCUS would not pursue a claim against SDCS for Released Product was reasonable
27  under the circumstances.

28       100.    On May 10, 2007, MARCUS filed suit against SDCS, Sergio Hernandez and

1   others seeking damages for the alleged unauthorized release of the Released Product. A

2   copy of the Marcus' Complaint is attached as Exhibit "C" to CATLIN'S complaint.

3        101.    In paragraph 8 of its Complaint, MARCUS admitted that the storage contract

4   between MARCUS and SDCS consists of the terms and conditions contained in SDCS' Non-

5   Negotiable Warehouse Receipt.

6        102.    In paragraph 8 of its Complaint, MARCUS incorporated the terms and

7   conditions of SDCS' Non-Negotiable Warehouse Receipt.

8        103.    In paragraphs 13-17 of Count I of its Complaint, MARCUS alleged that SDCS

9   has breached its storage contract with MARCUS.

10       104.    In Count II of the Complaint, MARCUS alleged that SDCS and the other

11  defendants converted the Released Products to and for their own use.

12       105.    Section 9 of SDCS's Non-Negotiable Warehouse Receipt is entitled

13  **"LIABILITY AND LIMITATION OF DAMAGES"** and provides in pertinent part as follows:

14  **(a) [SDCS] SHALL NOT BE LIABLE FOR ANY LOSS, DAMAGE OR DESTRUCTION TO GOODS, HOWEVER CAUSED, UNLESS SUCH LOSS, DAMAGE OR DESTRUCTION RESULTED FROM THE COMPANY'S FAILURE TO EXERCISE SUCH CARE IN REGARD TO THE GOODS AS A REASONABLY CAREFUL MAN WOULD EXERCISE UNDER LIKE CIRCUMSTANCES.  COMPANY IS NOT LIABLE FOR DAMAGES WHICH COULD NOT HAVE BEEN AVOIDED BY THE EXERCISE OF SUCH CARE.**

18  **\*\*\***

19  **(d) IN THE EVENT OF LOSS, DAMAGE OR DESTRUCTION TO THE GOODS FOR WHICH THE COMPANY IS LEGALLY LIABLE, STORER DECLARES THAT COMPANY'S LIABILITY SHALL BE LIMITED TO THE LESSER OF THE FOLLOWING: (1) THE ACTUAL COST TO STORER OF REPLACING, OR REPRODUCING THE LOST, DAMAGED, AND/OR DESTROYED GOODS TOGETHER WITH TRANSPORTATION COSTS TO WAREHOUSE, (2) THE FAIR MARKET VALUE OF THE LOST, DAMAGED, AND/OR DESTROYED GOODS ON THE DATE STORER IS NOTIFIED OF LOSS, DAMAGE AND/OR DESTRUCTION, (3) 50 TIMES THE MONTHLY STORAGE CHARGE APPLICABLE TO SUCH LOST, DAMAGED AND/OR DESTROYED GOODS, (4) $0.50 PER POUND FOR SAID LOST, DAMAGED, AND/OR DESTROYED GOODS. PROVIDED, HOWEVER THAT WITHIN A REASONABLE TIME AFTER RECEIPT OF THIS WAREHOUSE RECEIPT, STORER MAY, UPON WRITTEN REQUEST INCREASE COMPANY'S LIABILITY ON PART OR ALL OF THE GOODS IN WHICH CASE AN INCREASED CHARGE WILL BE MADE BASED UPON SUCH INCREASED VALUATION; FURTHER PROVIDED THAT NO SUCH REQUEST SHALL BE VALID UNLESS MADE BEFORE LOSS, DAMAGE OR DESTRUCTION TO ANY PORTION OF THE GOODS HAS OCCURRED.**

**(e)  THE COMPANY'S LIABILITY REFERRED TO IN SECTION 9(d) SHALL BE STORER'S EXCLUSIVE REMEDY AGAINST COMPANY FOR ANY CLAIMS OR CAUSE OF ACTION WHATSOEVER RELATING TO LOSS, DAMAGE AND/OR DESTRUCTION OF GOODS AND SHALL APPLY TO ALL CLAIMS INCLUDING INVENTORY SHORTAGES AND MYSTERIOUS DISAPPEARANCE CLAIMS UNLESS STORER PROVES BY AFFIRMATIVE EVIDENCE THAT COMPANY CONVERTED THE GOODS TO ITS OWN USE. STORER WAIVES THE RIGHT TO RELY UPON ANY PRESUMPTION OF CONVERSION IMPOSED BY LAW, IN NO EVENT SHALL STORER BE ENTITLED TO INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES.** [Bold with capitals in the original].

106.  SDCS was served with the MARCUS' complaint on June 22, 2007 and immediately forwarded the summons and complaint, with a demand for a defense to plaintiff or its agents.

107.  CATLIN received a notice of the MARCUS' complaint from SDCS on or before June 26, 2007.

108.  SDCS was required to answer or otherwise plead to the complaint on or before July 23, 2007.

109.  On July 10, 2007 CATLIN's agent Christopher Moss sent the following email to SDCS' counsel, Linda Fritz:

> Thank you for your follow-up and diligence. There is a question as to whether or not MARCUS FOODS [sic] lawsuit triggers coverage under the Warehouse Legal Liability Policy and the insurer must reserve all of its rights under the policy, including the right to deny coverage in its entirety. We are presently evaluating the coverage situation and hope to have an answer in that regard before the end of the week.

> I would like to contact a defense attorney I would choose to use if coverage applies to see if he can take the case. I will make this call in the morning and if he can take the case I would suggest that you consider him. I will call you after I speak with him.

110.  On July 18, 2007 SDCS retained counsel at its own expense to represent it and its employee, Miguel Cueva, in the MARCUS' lawsuit since its last communication from CATLIN and/or its agent Christopher Moss was July 12, 2007 when Christopher Moss emailed SDCS' Linda Fritz and advised her that he was playing phone tag with the counsel he referred to in his July 7 2007 email, that CATLIN was still "trying to shore up the issue of

ANSWER TO COMPLAINT AND COUNTERCLAIM FOR DECLARATORY JUDGMENT

1   coverage and whether or not this lawsuit [the Marcus Foods' lawsuit] triggers coverage under

2   the Warehouse Legal Liability policy" and that CATLIN "continues to reserve all rights under

3   the policy."

4         111.   On July 26, 2006, CATLIN, through its counsel, emailed a letter to SDCS

5   denying it had any duty to defend SDCS but allegedly reserving its right to indemnify SDCS

6   under the Policy in relation to the MARCUS' complaint.

7   **FIRST COUNTERCLAIM**

8   **<u>(Breach of Contract to Defend)</u>**

9       112.   SDCS incorporates by this reference paragraphs 1 through 111, above.

10      113.   Paragraph 1(a) of the Policy provides that the [Insurer] agrees:

11          To pay on behalf of the **Insured** those sums that the Insured
12          becomes legally obligated to pay for **Property Damage** by reason
        of liability imposed upon the **Insured** as a warehouse operator or
13          bailee resulting from an **occurrence** during the certificate period.

14      114.   Paragraph 2(b) of the Policy provides as follows:

15          b.   The **Company** has the right and duty, to defend any suit or other
           proceedings with may be brought against the **Insured** to enforce
16             claims, even if such suits or proceedings are groundless, false or
17             fraudulent. But:

18             (1)   **Company** may make such investigation, negotiation and
                settlement of any claim or suit as the **Company** deems
19                  warranted whether such claim exceeds policy deductible
20                  or not;

21             (2)   **Company** reserves and shall have the right to select
                defense attorneys and determine reasonable and
22                  appropriate compensation for those defense attorneys;

23             (3)   **Company's** right and duty to defend shall end when
24                  **Company** has paid or tendered the applicable limit of
                insurance to one or more claimants.
25

26             (4)   **Company** had no duty to defend the **Insured** against any
                suit or other proceedings seeking damages to which this
27                  insurance does not apply.

28      115.   Paragraph F, entitled **<u>DEFINITIONS</u>** provides in pertinent part as follows:

3.    **Property Damage**" means physical loss, damage or destruction to tangible, personal property owned by others in the care, custody or control of the **Insured** while on the **Premises** of the **Insured** and includes loss of use of such property. **Property Damage** includes the reasonable and necessary costs incurred to remove the debris of such property after an **Occurrence. Property Damage** includes actual loss of profits not to exceed those profits, which would have been realized from the sale of the lost, damaged or destroyed property. **Property Damage** does not include any other consequential damages including, but not limited to, personal injury, other lost profits, or damage to reputation or goodwill.

4.    The term **"Occurrence",** wherever employed in this Insurance, is defined as (1) an accident that takes place during the period of insurance under this Certificate, or (2) in the absence thereof, a continuous or repeated exposure to conditions which unexpectedly cause loss or destruction of or damage to tangible property during the period of insurance under this Certificate, and all such exposure to substantially the same general conditions existing at or emanating from any one **Premises** specified in the Supplemental Declarations shall be deemed one **Occurrence.**

116.    CATLIN failed to conduct a reasonable investigation of the allegations in the MARCUS lawsuit and therefore breached the implied obligation of good faith and fair dealing inherent in every contract under California law.

117.    Had CATLIN conducted a reasonable investigation of the allegations in the MARCUS lawsuit, CATLIN would have determined that it had a duty to defend SDCS in the MARCUS law suit.

118.    CATLIN's failure to conduct a reasonable investigation of the allegations in the MARCUS lawsuit constitutes a material breach of the Policy.

119.    CATLIN's refusal to defend SDCS in the MARCUS lawsuit is a material breach of CATLIN's obligation under the Policy because the claims MARCUS alleged in the MARCUS lawsuit clearly allege an occurrence and property damage under the Policy.

120. SDCS has substantially complied with all its obligations under the terms of the Policy.

121. As a result of CATLIN's breach of its obligations under the policy to conduct a reasonable investigation and to provide SDCS with a defense in the MARCUS law suit, SDCS has incurred damages in excess of $75,000 in attorneys' fees and expenses in defending itself in the MARCUS lawsuit, no part of which has CATLIN been reimbursed.

## SECOND COUNTERCLAIM
### (Breach of Covenant of Good Faith and Fair Dealing)

122. SDCS incorporates by this reference paragraphs 1 through 121, above.

123. CATLIN's denial of its duty to defend SDCS in the MARCUS lawsuit is without proper cause and is unreasonable.

124. CATLIN's refusal to investigate the allegations in the MARCUS lawsuit is inherently unreasonable.

125. CATLIN's interpretation of the allegations of the MARCUS' lawsuit and/or its interpretation of the Policy in refusing to defend SDCS in the MARCUS lawsuit are inherently unreasonable.

126. At the time CATLIN wrongfully denied a defense to SDCS, CATLIN knew or should have known the following regarding the allegations in the MARCUS' lawsuit including, but not limited to, the following:

a. That Count I of the MARCUS' lawsuit alleged that SDCS acts and/or omissions were negligent and therefore constituted an occurrence under the Policy;

b. That the product allegedly released by SDCS without MARCUS' authorization was perishable and therefore could not have been returned to Marcus when the alleged unauthorized release of product was learned by Marcus;

c. That any release of product without MARCUS' authorization as alleged in the MARCUS' lawsuit constitutes Property Damage under the Policy;

d. That the MARCUS' lawsuit does not allege MARCUS sustained a loss arising out of any processing performed by or on behalf of SDCS.

e. That the loss alleged by MARCUS in the MARCUS' lawsuit does not allege an "unexplained loss and shortage of product based upon a discrepancy between a physical count and a book, computer or other inventory."

ANSWER TO COMPLAINT AND COUNTERCLAIM FOR DECLARATORY JUDGMENT

f.   That in refusing to defend SDCS in the MARCUS' lawsuit while reserving its right to indemnify SDCS in the MARCUS' lawsuit, CATLIN has explicitly or implicitly admitted that the MARCUS Complaint alleged facts that potentially triggered coverage under the Policy and,

g.   That CATLIN did not suffer substantial prejudice as required by law, in order to deny coverage for untimely notice.

127.   CATLIN's actions constitute a vexatious and unreasonable refusal to defend SDCS in the MARCUS lawsuit.

128.   As a result of CATLIN's unreasonable and vexatious refusal to defend SDCS in the MARCUS' lawsuit, SDCS has incurred damages in excess of $75,000 in attorneys' fees and other expenses and SDCS is further entitled to recover punitive damages.

WHEREFORE, PLA-ART International dba San Diego Cold Storage prays for judgment against Catlin Underwriting Agencies, Ltd. as follows:

1.   For a declaratory judgment;

2.   That SDCS is entitled to a defense under the Policy in relation to the MARCUS' lawsuit;

3.   That SDCS is entitled to be reimbursed by CATLIN for all attorneys' fees and other expenses SDCS has incurred to date and will in the future incur in defending the MARCUS law suit;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

ANSWER TO COMPLAINT AND COUNTERCLAIM FOR DECLARATORY JUDGMENT

1    4.    For money damages in an amount to be proven at trial;

2    5.    For attorneys fees and costs of suit; and

3    6.    For such other and further relief as this Court deems just and proper.

4

5    DATED: April 3, 2008                 SOLOMON WARD SEIDENWURM & SMITH, LLP

6

7                                    By:    /s/ Edward J. McIntyre
                                           EDWARD J. MCINTYRE
8
                                           AND
9
                                           JOHN F. HORVATH
10                                         HORVATH & WEAVER, P.C.
                                           Attorneys for Defendants San Diego
11                                         Refrigerated Services, doing business as
                                           Harborside Refrigerated Services, doing
12                                         business as Harborside; San Diego Refrigerated
                                           Services, Inc. doing business as San Diego
13                                         Terminals and Pla-Art International, Inc. doing
                                           business as San Diego Cold Storage, also
14                                         known as, SDCold, doing business as San
                                           Diego Cold, doing business as San Diego Ice &
15                                         Cold Storage

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2    I caused the **ANSWER TO COMPLAINT AND COUNTERCLAIM FOR**

3    **DECLARATORY JUDGMENT** to be served in the following manner:

4        **Electronic Mail Notice List**

5        The following are those who are currently on the list to receive e-mail notices for this
6    case.

7        **Electronic Mail Notice List**

8

| Jack Chia-Ko Hsu, Esq. | Kevin Gerry, Esq. |
|---|---|
| jhsu@christensenehret.com | kevingerry@earthlink.net |
| Christensen Ehret LLP | The Law Offices of Kevin Gerry |
| 222 West Adams Street, Suite 2170 | A Professional Corporation |
| Chicago, IL 60606 | 1001 Olive Street |
| Telephone: (312) 214-5355 | Santa Barbara, CA 93103 |
| Facsimile: (312) 214-1014 | Telephone: (310) 275-1620 |
| Attorneys for Plaintiff Catlin Underwriting Agencies Limited | Attorneys for Defendant Marcus Food Co. |

13

14        **Manual Notice List**

15        The following is the list of attorneys who are not on the list to receive e-mail notices

16    for this case (who therefore require manual noticing).

17

18        None.

19        /s/ Edward J. McIntyre
         EDWARD J. MCINTYRE

20

21

22

23

24

25

26

27

28

ANSWER TO COMPLAINT AND COUNTERCLAIM FOR DECLARATORY JUDGMENT