Mark E. Christensen, Esq. (SBN 229026)
Jack C. Hsu, Esq. (SBN 224980)
Edward E. Sipes, Esq. (SBN 172453)
CHRISTENSEN EHRET LLP
2780 Skypark Drive
Suite 460
Torrance, CA 90505
Telephone: (310) 534-0300
Facsimile: (310) 534-0340
mchristensen@christensenehret.com
jhsu@christensenehret.com
espies@christensenehret.com

Attorneys for Plaintiffs, Catlin Underwriting Agencies, Limited

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATLIN UNDERWRITING AGENCIES, LIMITED, <br><br> Plaintiff, <br><br> -vs.- <br><br> SAN DIEGO REFRIGERATED SERVICES, INC. D/B/A HARBORSIDE D/B/A SAN DIEGO TERMINALS, PLA-ART INTERNATIONAL D/B/A SAN DIEGO COLD STORAGE, SAN DIEGO COLD STORAGE, INC., MIGUEL CUEVA A/K/A MIGUEL TAMAYO, SERGIO HERNANDEZ, MARCUS FOODS, INC., and DOES 1 through 100, Inclusive <br><br> Defendants. | Case No. 08-CV-0173 WQH (JMA) <br><br> **CATLIN'S REPLY AND AFFIRMATIVE DEFENSES TO DEFENDANTS' COUNTERCLIAM** |

## CATLIN'S REPLY TO COUNTERCLAIM

Plaintiff, Catlin Underwriting Agencies, Limited ("Catlin"), for its Reply to PLA-ART International, Inc. dba San Diego Cold Storage's ("SDCS's") Counterclaim for Declaratory Judgment, states as follows:

# I

## THE PARTIES

77. PLA-ART International, Inc. dba San Diego Cold Storage ("SDCS") is a California corporation which, at all time relevant, engaged in business as a public refrigerated warehouse operator at 1240 W. 28th Street, National City, California.

**REPLY:** **Upon information and belief, Catlin admits the allegations contained in paragraph 77 of SDCS's Counterclaim for Declaratory Judgment.**

78. SDCS is informed that Catlin Underwriting Agencies Limited ("CATLIN") is a company organized under the laws of England engaged in business as a commercial insurers and at all times relevant was authorized to underwrite risks in the State of California.

**REPLY:** **Catlin admits the allegations in paragraph 78 of SDCS's Counterclaim for Declaratory Judgment.**

# II

## JURISDICTION AND VENUE

79. This Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a)(2) because it is a civil action in which the matter in controversy exceeds $75,000 exclusive of interest and costs, between a citizen of California or subject of a foreign state, United Kingdom.

**REPLY:** **Catlin admits the allegations in paragraph 79 of SDCS's Counterclaim for Declaratory Judgment.**

80. This Court has declaratory judgment jurisdiction over this actual controversy pursuant to the provisions of 28 U.S.C. § 2201, *et seq.*

**REPLY:** **Catlin admits the allegations in paragraph 80 of SDCS's Counterclaim for Declaratory Judgment.**

81. Venue in this District is proper pursuant to the provisions of 28 U.S.C. § 1391(a)(1) and (2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**REPLY:** **Catlin admits the allegations in paragraph 81 of SDCS's Counterclaim for Declaratory Judgment.**

CATLIN'S REPLY AND AFFIRMATIVE DEFENSES TO DEFENDANTS' COUNTERCLAIM

82. CATLIN is an alien and thus may be sued in any district pursuant to the provisions of 28 U.S.C. § 1391(d), including in this District.

**REPLY:** **Catlin admits that it is a foreign corporation and may be sued in this District. Catlin denies the remaining allegations contained in paragraph 82 of SDCS's Counterclaim for Declaratory Judgment.**

## III

## FACTUAL BACKGROUND

83. CATLIN issued its Certificate No. LON7801-05 with SDCS, among others, as the named insureds, with a policy effective date of January 1, 2006 (Subject Policy) providing coverage for SDCS' [sic] legal liability as a warehouse operator or bailee at 1240 W. 28th Street, National City, California ("the National City facility").

**REPLY:** **Catlin admits that it issued a Certificate No. LON7801-05. Catlin states that the Certificate is the best evidence of its terms, must be read as a whole, and any and everything at variance therewith is denied. Catlin denies SDRS and SDCS's incomplete and improper characterizations of and improper legal conclusions drawn from said document and/or improper legal conclusions. Catlin denies the remaining allegations contained in paragraph 83 of SDCS's Counterclaim for Declaratory Judgment.**

84. SDCS stored products for several customers, including MARRCUS FOOD CO. ("MARCUS") at the National City facility in June, 2005.

**REPLY:** **Upon information and belief, Catlin admits the allegations contained in paragraph 84 of SDCS's Counterclaim for Declaratory Judgment.**

85. SDCS issued MARCUS non-negotiable warehouse receipts for all products SDCS stored for MARCS' [sic] account at the National City facility.

**REPLY:** **Catlin lacks sufficient knowledge or information upon which to form a belief as to the truth or falsity of the allegations contained in paragraph 85 of SDCS's Counterclaim for Declaratory Judgment and therefore denies same and demands strict proof thereof. Catlin denies SDCS's incomplete and improper characterization of and improper legal conclusions drawn from the events described in paragraph 85.**

-3-

CATLIN'S REPLY AND AFFIRMATIVE DEFENSES TO DEFENDANTS' COUNTERCLAIM

86. Between January 1, 2006 and September 30, 2006, Sergio Hernandez leased office space at the National City facility from SDCS.

REPLY: Catlin lacks sufficient knowledge or information upon which to form a belief as to the truth or falsity of the allegations contained in paragraph 86 of SDCS's Counterclaim for Declaratory Judgment and therefore denies same and demands strict proof thereof. Catlin denies SDCS's incomplete and improper characterization of and improper legal conclusions drawn from the events described in paragraph 86.

87. During the time he leased office space at the National City facility from SDCS, Sergio Hernandez was a sales agent for MARCUS.

REPLY: Catlin lacks sufficient knowledge or information upon which to form a belief as to the truth or falsity of the allegations contained in paragraph 87 of SDCS's Counterclaim for Declaratory Judgment and therefore denies same and demands strict proof thereof. Catlin denies SDCS's incomplete and improper characterization of and improper legal conclusions drawn from the events described in paragraph 87.

88. As a sales agent for MARCUS, Sergio Hernandez arranged sales of product stored at the National City facility for storage for MARCUS' [sic] account.

REPLY: Catlin lacks sufficient knowledge or information upon which to form a belief as to the truth or falsity of the allegations contained in paragraph 88 of SDCS's Counterclaim for Declaratory Judgment and therefore denies same and demands strict proof thereof. Catlin denies SDCS's incomplete and improper characterization of and improper legal conclusions drawn from the events described in paragraph 88.

89. As a sales agent for MARCUS, Sergio Hernandez arranged for the delivery of product to the National City facility for storage for MARCUS' [sic] account.

REPLY: Catlin lacks sufficient knowledge or information upon which to form a belief as to the truth or falsity of the allegations contained in paragraph 89 of SDCS's Counterclaim for Declaratory Judgment and therefore denies same and demands strict proof thereof. Catlin denies SDCS's incomplete and improper characterization of and improper legal conclusions drawn from the events described in paragraph 89.

90. As a sales agent for MARCUS, Sergio Hernandez inspected inbound and outbound product stored at the National City facility for MARCUS' [sic] account.

REPLY: Catlin lacks sufficient knowledge or information upon which to form a belief as to the truth or falsity of the allegations contained in paragraph 90 of SDCS's Counterclaim for Declaratory Judgment and therefore denies same and demands strict proof thereof. Catlin denies SDCS's incomplete and improper characterization of and improper legal conclusions drawn from the events described in paragraph 90.

91. As a sales agent for MARCUS, Sergio Hernandez often received MARCUS' [sic] product from SDCS National City facility and delivered product, in his own vehicle, to MARCUS' [sic] customers or made arrangements directly with the customers for the customers to come to the National City facility to pick up product and MARCUS knew this fact.

REPLY: Catlin lacks sufficient knowledge or information upon which to form a belief as to the truth or falsity of the allegations contained in paragraph 91 of SDCS's Counterclaim for Declaratory Judgment and therefore denies same and demands strict proof thereof. Catlin denies SDCS's incomplete and improper characterization of and improper legal conclusions drawn from the events described in paragraph 91.

92. As a sales agent for MARCUS, Sergio Hernandez had unrestricted access to the product stored for MARCUS' [sic] account at the National City facility and MARCUS knew this fact.

REPLY: Catlin lacks sufficient knowledge or information upon which to form a belief as to the truth or falsity of the allegations contained in paragraph 92 of SDCS's Counterclaim for Declaratory Judgment and therefore denies same and demands strict proof thereof. Catlin denies SDCS's incomplete and improper characterization of and improper legal conclusions drawn from the events described in paragraph 92.

93. On or before August 8, 2006, pursuant to a request from MARCUS, SDCS conducted a physical inventory of all MARCUS' [sic] product SDCS had in storage at the National City facility.

CATLIN'S REPLY AND AFFIRMATIVE DEFENSES TO DEFENDANTS' COUNTERCLAIM

**REPLY:** Catlin lacks sufficient knowledge or information upon which to form a belief as to the truth or falsity of the allegations contained in paragraph 93 of SDCS's Counterclaim for Declaratory Judgment and therefore denies same and demands strict proof thereof. Catlin denies SDCS's incomplete and improper characterization of and improper legal conclusions drawn from the events described in paragraph 93.

94. In September 2006, MARCUS made a written demand on SDCS for the alleged value of product which, according to MARCUS, Sergio Hernandez had removed from the National City facility and delivered to one of MARCUS' [sic] customers without MARCUS' [sic] consent, authorization of knowledge and without any payment to MARCUS for the product ("Released Product").

**REPLY:** Upon information and belief, Catlin admits the allegations contained in paragraph 94 of SDCS's Counterclaim for Declaratory Judgment.

95. SDCS rejected MARCUS FOODS' [sic] demand for payment and denied it was liable to MARCUS FOODS for the Released Product Sergio Hernandez had removed from the National City facility.

**REPLY:** Upon information and belief, Catlin denies the allegations contained in paragraph 95 of SDCS's Counterclaim for Declaratory Judgment.

96. Similarly, SDCS rejected MACUS' [sic] subsequent demands for payment relating to the alleged Released Product.

**REPLY:** Catlin lacks sufficient knowledge or information upon which to form a belief as to the truth or falsity of the allegations contained in paragraph 96 of SDCS's Counterclaim for Declaratory Judgment and therefore denies same and demands strict proof thereof. Catlin denies SDCS's incomplete and improper characterization of and improper legal conclusions drawn from the events described in paragraph 96.

97. During September 2006, MARCUS provided a Memo of Understanding to SDCS purportedly executed by Alberto Sanchez, the owner of Del Rancho Foods in which Mr. Sanchez agreed to assume certain debt obligations to MARCUS, including an obligation to pay MARCUS

CHRISTENSEN EHRET LLP

for "[A]pproximately $143,000 of products delivered to me by Sergio Hernandez that was not invoiced by Marcus Food Company, Inc". [sic]

**REPLY:** **Catlin states that the Memo of Understanding is the best evidence of its terms, must be read as a whole, and any and everything at variance therewith is denied. Catlin denies SDCS's incomplete and improper characterizations of and improper legal conclusions drawn from said document. Catlin denies the remaining allegations contained in paragraph 97 of SDCS's Counterclaim for Declaratory Judgment.**

98. Based on the Memo of Understanding it received from MARCUS and other actions by MARCUS and Sergio Hernandez, SDCS reasonably believed that MARCUS had ratified the actions of its sales' [sic] agent Sergio Hernandez and that MARCUS would not pursue any claim against SDCS for the Released Product.

**REPLY:** **Catlin denies the allegations contained in paragraph 98 of SDCS's Counterclaim for Declaratory Judgment.**

99. SDCS's reliance on the Memo of Understanding to form the belief that MARCUS would not pursue a claim against SDCS for Released Product was reasonable under the circumstances.

**REPLY:** **Catlin denies the allegations contained in paragraph 99 of SDCS's Counterclaim for Declaratory Judgment.**

100. On May 10, 2007, MARCUS filed suit against SDCS, Sergio Hernandez and others seeking damages for the alleged unauthorized release of the Released Product. A copy of Marcus' Complaint is attached as Exhibit "C" to CATLIN's complaint.

**REPLY:** **Catlin admits the allegations contained in paragraph 100 of SDCS's Counterclaim for Declaratory Judgment.**

101. In paragraph 8 of its Complaint, MARCUS admitted that the storage contract between MARCUS and SDCS consists of the terms and conditions contained in SDCS' Non-Negotiable Warehouse Receipt.

**REPLY:** **Catlin states that the Marcus Foods Complaint is the best evidence of its terms, must be read as a whole, and any and everything at variance therewith is denied.**

**CATLIN'S REPLY AND AFFIRMATIVE DEFENSES TO DEFENDANTS' COUNTERCLAIM**

1  Catlin denies SDCS's incomplete and improper characterizations of and improper legal
2  conclusions drawn from said document. Catlin denies the remaining allegations contained in
3  paragraph 101 of SDCS's Counterclaim for Declaratory Judgment.

4      102.   In paragraph 8 of its Complaint, MARCUS incorporated the terms and conditions
5  of SDCS' [sic] Non-Negotiable Warehouse Receipt.

6      REPLY:   Catlin states that the Marcus Foods Complaint is the best evidence of
7  its terms, must be read as a whole, and any and everything at variance therewith is denied.
8  Catlin denies SDCS's incomplete and improper characterizations of and improper legal
9  conclusions drawn from said document. Catlin denies the remaining allegations contained in
10 paragraph 102 of SDCS's Counterclaim for Declaratory Judgment.

11     103.   In paragraph 13-17 of Count I of its Complaint, MARCUS alleges that SDCS has
12 breached its storage contract with MARCUS.

13     REPLY:   Catlin states that the Marcus Foods Complaint is the best evidence of
14 its terms, must be read as a whole, and any and everything at variance therewith is denied.
15 Catlin denies SDCS's incomplete and improper characterizations of and improper legal
16 conclusions drawn from said document. Catlin denies the remaining allegations contained in
17 paragraph 103 of SDCS's Counterclaim for Declaratory Judgment.

18     104.   In Count II of the Complaint, MARCUS alleged that SDCS and the other
19 defendants converted the Released Products to and for their own use.

20     REPLY:   Catlin states that the Marcus Foods Complaint is the best evidence of
21 its terms, must be read as a whole, and any and everything at variance therewith is denied.
22 Catlin denies SDCS's incomplete and improper characterizations of and improper legal
23 conclusions drawn from said document. Catlin denies the remaining allegations contained in
24 paragraph 104 of SDCS's Counterclaim for Declaratory Judgment.

25     105.   Section 9 of SDCS' [sic] Non-Negotiable Warehouse Receipt is entitled
26 "LIABILITY AND LIMITATION OF DAMAGES" and provides in pertinent part as follows:

27
28

CHRISTENSEN EHRET LLP

-8-
**CATLIN'S REPLY AND AFFIRMATIVE DEFENSES TO DEFENDANTS' COUNTERCLAIM**

(a) [SCDS] SHALL NOT BE LIABLE FOR ANY LOSS, DAMAGE OR DESTRUCTION TO GOODS, HOWEVER CAUSED, UNLESS SUCH LOSS, DAMAGE OR DESTRUCTION RESULTED FROM THE COMPANY'S FAILURE TO EXERCISE SUCH CARE IN REGARD TO THE GOODS AS A REASONABLY CAREFUL MAN WOULD EXERCISE UNDER LIKE CIRCUMSTANCES. COMPANY IS NOT LIABLE FOR DAMAGES WHICH COULD NOT HAVE BEEN AVOIDED BY THE EXERCISE OF SUCH CARE.

* * *

(d) IN THE EVENT OF LOSS, DAMAGE OR DESTRUCTION TO THE GOODS FOR WHICH THE COMPANY IS LEGALLY LIABLE, STORER DECLARES THAT THE COMPANY'S LIABILITY SHALL BE LIMTED TO THE LESSER OF THE FOLLOWING: (1) THE ACTUAL COST TO THE STORER OF REPLACING OR REPRODUCING THE LOST, DAMAGED AND/OR DESTROYED GOODS TOGETHER WITH TRANSPORTATION COSTS TO THE WAREHOUSE, (2) THE FAIR MARKET VALUE OF THE LOST, DAMAGED AND/OR DESTROYED GOODS ON THE DATE STORER IS NOTIFIED OF THE LOSS, DAMAGE AND/OR DESTRUCTION, (3) 50 TIMES THE MONTHLY STORAGE CHARGE APPLICABLE TO SUCH LOST, DAMAGED, AND/OR DESTROYED GOODS, (4) $0.50 PER POUND FOR SAID LOST, DAMAGED AND/OR DESTROYED GOODS. PROVIDED, HOWEVER, THAT WITHIN A REASONABLE TIME AFTER RECEIPT OF THIS WAREHOUSE RECEIPT, STORER MAY, UPON WRITTEN REQUEST INCREASE COMPANY'S LIABILITY ON PART OR ALL OF THE GOODS IN WHICH CASE AN INCREASED CHARGE WILL BE MADE BASED UPON SUCH INCREASED VALUATION; FURTHER PROVIDED THAT NO SUCH REQUEST SHALL BE VALID UNLESS MADE BEFORE LOSS, DAMAGE OR DESTRUCTION TO ANY PORTION OF THE GOODS HAS OCCURRED.

(e) THE COMPANY'S LIABILITY REFERRED TO IN SECTION 9(d) SHALL BE STORER'S EXCLUSIVE REMEDY AGAINST COMPANY FOR ANY CLAIMS OR CAUSE OF ACTION WHATSOEVER RELATING TO LOSS, DAMAGE AND/OR DESTRUCTION OF GOODS AND SHALL APPLY TO ALL CLAIMS INCLUDING INVENTORY SHORTAGE AS AND MYSTERIOUS DISAPPEARANCE CLAIMS UNLESS STORER PROVES BY AFFIRMATIVE EVIDENCE THAT COMPANY CONVERTED THE GOODS TO ITS OWN USE. STORER WAIVES THE RIGHT TO RELY UPON ANY PRESUMPTION OF CONVERSION IMPOSED BY LAW, IN NO EVENT SHALL STORER BE ENTITLED TO INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES. [Bold with capitals in the original.]

**REPLY:** Catlin admits that SDCS correctly recites a portion of SDCS's Warehouse Receipt. Catlin states that SDCS's Warehouse Receipt is the best evidence of its terms, must be read as a whole, and any and everything at variance therewith is denied. Catlin denies SDCS's incomplete and improper characterizations of and improper legal conclusions drawn from said document. Catlin denies the remaining allegations contained in paragraph 105 of SDCS's Counterclaim for Declaratory Judgment.

106. SDCS was served with the MARCUS' [sic] complaint on June 22, 2007 and immediately forwarded the summons and the complaint, with a demand for a defense to plaintiff or its agents.

**REPLY:** Catlin states that the Marcus Foods Complaint was served on SDCS. Answering further, Catlin denies the remaining allegations contained in paragraph 106 of SDCS's Counterclaim for Declaratory Judgment.

107. Catlin received a notice of the MARCUS' [sic] complaint from SDCS on or before June 26, 2007.

**REPLY:** Catlin admits the allegations contained in paragraph 107 of SDCS's Counterclaim for Declaratory Judgment.

108. SDCS was required to answer or otherwise plead to the complaint on or before July 23, 2007.

**REPLY:** Catlin admits the allegations contained in paragraph 108 of SDCS's Counterclaim for Declaratory Judgment.

109. On July 10, 2007 Catlin's agent Christopher Moss sent the following e-mail to SDCS' counsel, Linda Fritz:

> Thank you for your follow-up and diligence. There is a question as to whether or not MARCUS FOODS [sic] lawsuit triggers coverage under the Warehouse Legal Liability Policy and the insurer must reserve all of its rights under the policy, including the right to deny coverage in its entirety. We are presently evaluating the coverage situation and hope to have an answer in that regard before the end of the week.

> I would like to contact a defense attorney I would choose to use if coverage applies to see if he can take the case. I will make this call in the morning and if he can take the case I would suggest that you would consider him. I will call you after I speak with him.

**REPLY:** Catlin states that Mr. Moss's e-mail is the best evidence of its terms, must be read as a whole, and any and everything at variance therewith is denied. Catlin denies SDCS's incomplete and improper characterizations of and improper legal conclusions drawn from said document. Catlin denies the remaining allegations contained in paragraph 109 of SDCS's Counterclaim for Declaratory Judgment.

110. On July 18, 2007 SDCS retained counsel at its own expense to represent it and its employee, Miguel Cueva, in the MARCUS' [sic] lawsuit since its last communication from Catlin and/or its agent Christopher Moss was July 12, 2007 when Christopher Moss emailed SDCS' Linda Fritz and advised her that he was playing phone tag with the counsel he referred to in his July 7, 2007 email, that Catlin was still "trying to shore up the issue of coverage and whether or not this lawsuit [the Marcus Foods' lawsuit] triggers coverage under the Warehouse Legal Liability policy" and that Catlin "continues to reserve all rights under the policy."

**REPLY:** Catlin states that Mr. Moss's e-mail is the best evidence of its terms, must be read as a whole, and any and everything at variance therewith is denied. Catlin denies SDCS's incomplete and improper characterizations of and improper legal conclusions drawn from said document. Catlin denies the remaining allegations contained in paragraph 110 of SDCS's Counterclaim for Declaratory Judgment.

111. On July 26, 2006, Catlin, through its counsel, emailed a letter to SDCS denying it had any duty to defend SDCS but allegedly reserving its right to indemnify SDCS under the Policy in relation to the MARCUS' complaint.

**REPLY:** Catlin admits the allegations contained in paragraph 111 of SDCS's Counterclaim for Declaratory Judgment.

## FIRST COUNTERCLAIM

### (Breach of Contract to Defend)

112. SDCS incorporates by this reference paragraphs 1 through 111, above.

**REPLY:** Catlin re-asserts and incorporates by reference its allegations in paragraphs 1-76 of its Complaint, as though fully stated herein. Catlin reasserts and repleads its reply to paragraphs 77-111 of SDCS's Counterclaim for Declaratory Judgment here, as though fully stated herein.

113. Paragraph 2(b) of the Policy provides that the [Insurer] agrees:

> To pay on behalf of the **Insured** those sums that the Insured becomes legally obligated to pay for **Property Damage** by reason of liability imposed upon the **Insured** as a warehouse operator or bailee resulting from an **occurrence** during the certificate period.

**REPLY:** Catlin admits that SDCS correctly recites a portion of the Policy. Catlin states that the Policy is the best evidence of its terms, must be read as a whole, and any and everything at variance therewith is denied. Catlin denies SDCS's incomplete and improper characterizations of and improper legal conclusions drawn from said document. Catlin denies the remaining allegations contained in paragraph 113 of SDCS's Counterclaim for Declaratory Judgment.

114. Paragraph 2(b) of the policy provides as follows:

> b. The **Company** has the right and duty, to defend any suit or other proceedings that may be brought against the **Insured** to enforce claims, even if such suits or proceedings are groundless, false or fraudulent. But:
>
> (1) **Company** may make such investigation, negotiation and settlement of any claim or suit ad the **Company** deems warranted whether such claim exceeds policy deductible or not;
>
> (2) **Company** reserves and shall have the right to select defense attorneys and determine reasonable and appropriate compensation for those defense attorneys;

      (3) **Company's** right and duty to defense shall end when **Company** has paid or tendered the applicable limit of insurance to one or more claimants;

      (4) **Company** had no duty to defend the **Insured** against any suit or proceedings seeking damages to which this insurance does not apply.

**REPLY:** Catlin admits that SDCS correctly recites a portion of the Policy. Catlin states that the Policy is the best evidence of its terms, must be read as a whole, and any and everything at variance therewith is denied. Catlin denies SDCS's incomplete and improper characterizations of and improper legal conclusions drawn from said document. Catlin denies the remaining allegations contained in paragraph 114 of SDCS's Counterclaim for Declaratory Judgment.

    115.    Paragraph F, entitled **DEFINITIONS** provides in pertinent part as follows:

    3.  **Property Damage** means physical loss, damage or destruction to tangible, personal property owned by others in the care, custody or control of the **Insured** while on the **Premises** of the **Insured** and includes loss of use of such property. **Property Damage** includes the reasonable and necessary costs incurred to remove the debris of such property after an **Occurrence**. **Property Damage** includes actual loss of profits not to exceed those profits, which would have been realized from the sale of the lost, damaged or destroyed property. **Property Damage** does not include any other consequential damages including, but not limited to, personal injury, other lost profits, or damage to reputation or goodwill.

    4.  The term "**Occurrence**", whether employed in this Insurance, is defined as (1) an accident that takes place during the period of insurance under this Certificate, or (2) in the absence thereof, a continuous or repeated exposure to conditions which unexpectedly cause loss or destruction or damage to tangible property during the period of insurance under this Certificate, and all such exposure to substantially the same general conditions existing at or emanating from any one **Premises** specified in the Supplemental Declarations shall be deemed one **Occurrence**.

1    **REPLY:** Catlin admits that SDCS correctly recites a portion of the Policy. Catlin states that the Policy is the best evidence of its terms, must be read as a whole, and any and everything at variance therewith is denied. Catlin denies SDCS's incomplete and improper characterizations of and improper legal conclusions drawn from said document. Catlin denies the remaining allegations contained in paragraph 115 of SDCS's Counterclaim for Declaratory Judgment.

116. Catlin failed to conduct a reasonable investigation of the allegations in the MARCUS lawsuit and therefore breached the implied obligation of good faith and fair dealing inherent in every contract under California law.

**REPLY:** Catlin denies the allegations contained in paragraph 116 of SDCS's Counterclaim for Declaratory Judgment.

117. Had Catlin conducted a reasonable investigation of the allegations in the MARCUS lawsuit, Catlin would have determined that it had a duty to defend SDCS in the MARCUS lawsuit.

**REPLY:** Catlin denies the allegations contained in paragraph 117 of SDCS's Counterclaim for Declaratory Judgment.

118. Catlin's failure to conduct a reasonable investigation of the allegations in the MARCUS lawsuit constitutes a material breach of the Policy.

**REPLY:** Catlin denies the allegations contained in paragraph 118 of SDCS's Counterclaim for Declaratory Judgment.

119. Catlin's refusal to defend SDCS in the MARCUS lawsuit is a material breach of Catlin's obligation under the Policy because the claims MARCUS alleged in the MARCUS lawsuit clearly allege an occurrence and property damage under the Policy.

**REPLY:** Catlin denies the allegations contained in paragraph 119 of SDCS's Counterclaim for Declaratory Judgment.

120. SDCS has substantially complied with all its obligations under the terms of the Policy.

**REPLY: Catlin denies the allegations contained in paragraph 120 of SDCS's Counterclaim for Declaratory Judgment.**

121. As a result of Catlin's breach of its obligations under the policy to conduct a reasonable investigation and to provide SDCS with a defense in the MARCUS lawsuit, SDCS has incurred damages in excess of $75,000 in attorneys' fees and expenses in defending itself in the MARCUS lawsuit, no part of which has Catlin been reimbursed.

**REPLY: Catlin denies the allegations contained in paragraph 121 of SDCS's Counterclaim for Declaratory Judgment.**

## SECOND COUNTERCLAIM

### (Breach of Covenant of Good Faith and Fair Dealing)

122. SDCS incorporates by this reference paragraphs 1 through 121, above.

**REPLY: Catlin asserts and incorporates by reference its allegations in paragraphs 1-76 of its Complaint, as though fully stated herein. Catlin reasserts and repleads its reply to paragraphs 77-121 of SDCS's Counterclaim for Declaratory Judgment, as though fully stated herein.**

123. Catlin's denial of its duty to defend SDCS in the MARCUS lawsuit is without proper cause and is unreasonable.

**REPLY: Catlin denies the allegations contained in paragraph 123 of SDCS's Counterclaim for Declaratory Judgment.**

124. Catlin's refusal to investigate the allegations in the MARCUS lawsuit is inherently unreasonable.

CATLIN'S REPLY AND AFFIRMATIVE DEFENSES TO DEFENDANTS' COUNTERCLAIM

**REPLY:** **Catlin denies the allegations contained in paragraph 124 of SDCS's Counterclaim for Declaratory Judgment.**

125. Catlin's interpretation of the allegations of the MARCIS' lawsuit and/or its interpretation of the Policy in refusing to defend SDCS in the MARCUS lawsuit is inherently unreasonable.

**REPLY:** **Catlin denies the allegations contained in paragraph 125 of SDCS's Counterclaim for Declaratory Judgment.**

126. At the time Catlin wrongly denied a defense to SDCS, Catlin knew or should have known the following regarding the allegations in the MARCUS' lawsuit, including, but not limited to, the following:

    a. That Count I of the MARCUS' lawsuit alleged that SDCS acts and/or omissions were negligent and therefore constituted an occurrence under the Policy;

    b. That the produce allegedly released by SDCS without MARCUS' authorization was perishable and therefore could not have been returned to Marcus when the alleged unauthorized release of product was learned by Marcus;

    c. That any release of product without MARCUS' authorization as alleged in the MARCUS' lawsuit constitutes Property Damage under the Policy;

    d. That the MARCUS' lawsuit does not allege MARCUS sustained a loss arising out of any processing performed by or on behalf of SDCS;

    e. That the loss alleged by MARCUS in the MARCUS' lawsuit does not allege an "unexplained loss and shortage of product based upon a discrepancy between a physical count and a book, computer or other inventory."

    f. That in refusing to defend SDCS in the MARCUS' lawsuit while reserving its right to indemnify SDCS in the MARCUS lawsuit, Catlin has explicitly or implicitly admitted that the MARCUS Complaint alleged facts that potentially triggered coverage under the Policy and,

    g. That Catlin did not suffer substantial prejudice as required by law, in order to deny coverage for untimely notice.

**CATLIN'S REPLY AND AFFIRMATIVE DEFENSES TO DEFENDANTS' COUNTERCLAIM**

**REPLY:** Catlin denies the allegations contained in paragraph 126, including subparts a-g, of SDCS's Counterclaim for Declaratory Judgment.

127. Catlin's actions constitute a vexatious and unreasonable refusal to defend SDCS in the MARCUS lawsuit.

**REPLY:** Catlin denies the allegations contained in paragraph 127 of SDCS's Counterclaim for Declaratory Judgment.

128. As a result of Catlin's unreasonable and vexatious refusal to defend SDCS in the MARCUS lawsuit, SDCS has incurred damages in excess of $75,000 in attorneys' fees and other expenses and SDCS is further entitled to recover punitive damages.

**REPLY:** Catlin denies the allegations contained in paragraph 128 of SDCS's Counterclaim for Declaratory Judgment.

## CATLIN SEPARATE DEFENSES

Catlin hereby alleges the following Separate Defenses. By alleging the following Separate Defenses, Catlin makes no admission of any kind and does not assume any burdens of proof or production not otherwise properly resting upon it in this matter. Rather, Catlin identifies the Separate Defenses herein to preserve them for all proper uses under applicable law. Catlin has yet to conduct or complete discovery in this matter. As such, Catlin reserves the right to supplement, amend, modify, add or delete defenses after discovery is completed.

## FIRST AFFIRMATIVE DEFENSE

SDCS's Counterclaim for Declaratory Judgment fails to state a claim or cause of action upon which relief can be granted against Catlin.

## SECOND AFFIRMATIVE DEFENSE

The loss or damage complained of by SDCS in its Counterclaim for Declaratory Judgment is barred, in whole or in part, by the express terms, definitions, conditions, exclusions and/or other provisions of the Policy.

## THIRD AFFIRMATIVE DEFENSE

The Policy is subject to certain deductibles and limits which apply to reduce or limit, in whole or in part, SDCS's compensable damages and costs, if any.

## FOURTH AFFIRMATIVE DEFENSE

Coverage for SDCS's claim, if any, is limited by the provisions of the Policy relating to the valuation of a proper claim.

## FIFTH AFFIRMATIVE DEFENSE

SDCS's Counterclaim for Declaratory Judgment is barred, either in whole or in part, to the extent that other terms, definitions, conditions, exclusions and/or provisions of the Policy also apply to the alleged damages and costs for which SDCS seeks a recovery in this action and, thus, Catlin expressly reserves the right to assert and rely upon such other terms, definitions, conditions, exclusions and/or provisions of the Policy in the event that such terms, etc. are found to apply following the completion of discovery and trial preparation, or in the event that SDCS further amends, modifies, or otherwise alters its pleading in this matter.

Dated: April 23, 2008                               CHRISTENSEN EHRET LLP

By:     /s/Jack C. Hsu
MARK E. CHRISTENSEN, ESQ.
JACK C. HSU, ESQ.
EDWARD E. SIPES, ESQ.
Attorneys for Plaintiff, CATLIN
UNDERWRITING AGENCIES LIMITED

CATLIN'S REPLY AND AFFIRMATIVE DEFENSES TO DEFENDANTS' COUNTERCLAIM

## CERTIFICATE OF SERVICE

Jack C. Hsu, an attorney, does hereby certify service as to the foregoing Catlin's Reply and Affirmative Defenses to Defendant's Counterclaim was accomplished pursuant to ECF as to Filing Users and as to any party who is not a Filing User or represented by a Filing User on this 23rd day of April, 2008.

CHRISTENSEN EHRET LLP

By:     /s/Jack C. Hsu
MARK E. CHRISTENSEN, ESQ.
JACK C. HSU, ESQ.
EDWARD E. SIPES, ESQ.
Attorneys for Plaintiff, CATLIN UNDERWRITING AGENCIES LIMITED

**CATLIN'S REPLY AND AFFIRMATIVE DEFENSES TO DEFENDANTS' COUNTERCLAIM**